**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:19-cv-23685-JLK**

KEY WEST GOLF CLUB HOMEOWNERS
ASSOCIATION, INC.,

    Plaintiff,

v.

THE SINGH COMPANY, a Florida profit
corporation, SINGH CABLE COMPANY
LLC, a Florida limited liability company,
PRITAM SINGH, an individual residing in
Florida, KEY WEST GOLF CLUB
DEVELOPMENT, INC., a Florida profit
corporation, and COMCAST CABLE
COMMUNICATIONS, LLC, a Delaware
limited liability company;

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

THIS MATTER is before the Court on Defendant Comcast Cable Communications, LLC's Motion to Dismiss, filed May 22, 2020 (ECF No. 44) (the "Motion"), and the Motion to Dismiss (ECF No. 45) filed by Singh Co., Single Cable Co. LLC, Pritam Singh, and Key West Golf Club Development, Inc. (the "Singh Defendants"). The Court has also considered Plaintiff's combined Response in Opposition, filed June 12, 2020 (ECF No. 50), and Defendants' Replies, filed June 30, 2020 and July 3, 2020, respectively (ECF Nos. 57, 58).[1]

---

[1] Additionally, the Court has considered Plaintiff's Sur-Reply, filed July 13, 2020 (ECF No. 61) with leave of Court.

## I. BACKGROUND

Plaintiff Key West Golf Club Homeowners Association, Inc. (the "Association") brings this declaratory judgment action claiming that the Bulk Cable Television Agreement and Bulk Service Agreement entered into in 2001 between the Association, Singh Company, and Comcast are void under federal and state law. *See* Compl., ECF No. 1. As to the sole federal claim, the Association alleges that the agreements give Singh Company and Comcast the exclusive right to provide cable television services to the property in violation of the 2007 "Exclusivity Order" promulgated by the Federal Communications Commission ("FCC"). *Id.* at 13. As to the remaining state law claims, the Association alleges that the agreements are void under the Florida Homeowners' Association Act (the "HOA Act"), Fla. Stat. §§ 720.301 *et seq.* on grounds that the board of directors failed to obtain the required vote to approve the agreements, *id.* at 16, and that the agreements are void as an ultra vires act of the Association when it was under developer control. *Id.* at 15.[2]

The Association's initial Complaint was dismissed on March 26, 2020 for failure to allege Article III standing. *See* Or. Granting Def.'s Mot. Dismiss, ECF No. 38. Specifically, the Court found that "[w]hile the Association alleges in conclusory terms that the agreements are 'exclusive' and 'illegal,' the Complaint fails to identify any clause that bars the Association or homeowners from engaging other service providers, or that bars other providers from 'any access whatsoever to the premises' in violation of the FCC Exclusivity Order." *Id.* at 5 (quoting *Cates v. Crystal Clear Tech., LLC*, 874 F.3d 530, 537 (6th Cir. 2017)). Additionally, the Court declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.* at 6.

---

[2] The factual background underlying the Association's Complaint is more thoroughly discussed in the Court's Order Granting Defendant's Motion to Dismiss, ECF No. 38. In the instant opinion, the Court will only reiterate or expound upon the facts to the extent necessary to clarify the Court's holding.

The Association filed an Amended Complaint with leave of Court on April 24, 2020 to correct the deficiencies the Court observed. Am. Compl., ECF No. 39. In the Amended Complaint, the Association now alleges the existence of a contractual provision that supposedly bars the Association from engaging other service providers, as follows: "[the] Association represents that it has not granted and will not grant any other easements of rights which will interfere with the exclusive operation of cable television programming to the Residential Units." Am. Compl. ¶ 26 (citing ECF No. 39-3 ¶ 12). Through two separate motions, Comcast and the Singh Defendants have moved to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Association still fails to allege Article III standing. ECF Nos. 44, 45. This opinion addresses both of these motions, which are ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) may challenge subject matter jurisdiction through either a "facial" or "factual" attack. *See Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir. 1999). Where, as here, the defendant raises a facial attack, challenging the sufficiency of the allegations supporting jurisdiction, the court reviews the allegations as it does when considering a Rule 12(b)(6) motion. *Id.* To survive a motion to dismiss, the complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the court must accept all well-pled facts as true, it need not accept conclusory allegations. *Dalrymyple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).

## III.   DISCUSSION

### A.   Exclusivity Claim (Count I)

In Count I of the Amended Complaint, the Association requests a declaratory judgment that the 2001 agreements between the Association, Singh Company, and Comcast violate the 2007 FCC "Exclusivity Order." *See* Am. Compl. ¶¶ 96–123. In pertinent part, this order provides: "[N]o cable operator . . . shall enforce or execute any provision in a contract that grants it the exclusive right to provide any video programming service (alone or in combination with other services) to a MDU [multiple dwelling unit]. Any such exclusivity clause shall be null and void." *See In the Matter of Exclusive Service Contracts for Provision of Video Services in Multiple Dwelling Units and Other Real Estate Developments*, 22 FCC Rcd. 20235, 20251 (2007) (codified at 47 C.F.R. § 76.2000(a)). Through the Exclusivity Order, the FCC sought to promote competition among cable service providers, lower prices for consumers, and improve the quality of cable service given to residents of multiple dwelling units. *Id.* at 20236.

Here, the Association contends that the 2001 agreements violate the Exclusivity Order because they give the Singh Defendants (and Comcast) the exclusive right to provide cable services to residents of the Association. Am. Compl. ¶¶ 22, 26. According to the Association, "[t]his exclusive arrangement is anticompetitive and has adversely affected the market for cable and video services by significantly impairing and restricting the ability of other communication providers to deliver services to the Association and its members." *Id.* ¶ 118. To that end, the Association requests a declaratory judgment that the 2001 agreements are void as against public policy in violation of the Exclusivity Order and are therefore unenforceable. *Id.* at 28 ¶ 1.

The Association's initial Complaint was dismissed for failure to clearly allege or identify any contractual provision between the parties that barred the Association from engaging other

4

cable service providers. *See* Or. Granting Def.'s Mot. Dismiss at 5. The Association has now attempted to correct this deficiency by identifying several contractual provisions that (it argues) purport to give Comcast and the Singh Defendants the exclusive right to provide cable services to residents of the Association. *See, e.g.*, Am. Compl. ¶ 26 ("Sec. 12, titled 'Covenants of Association,' includes a [statement] that the Association 'has not granted and will not grant any other easements of rights which will interfere with the exclusive operation of cable television programming to the Residential Units.'").[3] Defendants again seek dismissal, contending that the Amended Complaint still fails to allege Article III standing because the Association has not—and cannot—allege a specific instance since 2001 where the Association attempted to engage another service provider, or where another service provider was prohibited from accessing the property. *See* Mots. Dismiss.

It is well settled that federal courts may only decide "Cases" and "Controversies" under Article III of the United States Constitution. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). According to the Supreme Court:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

---

[3] *See also, e.g.*, Am. Compl. ¶¶ 22, 42, 44–47, 53, 54, 69, 71, 89, 100–102.

*Lujan*, 504 U.S. at 560–61 (citations omitted). While Congress may establish a cause of action by way of statute, a party must still have suffered a concrete injury-in-fact to have standing to sue in federal court. *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1549 (2016). Put another way, a party alleging a bare procedural violation of a statute does not present a "case or controversy" within the confines of Article III. *See also Muransky v. Godiva Chocolatier, Inc.*, No. 16-16486, 2020 WL 6305084, at *10 (11th Cir. Oct. 28, 2020) (en banc) (applying *Spokeo* to hold that a plaintiff lacked standing to bring a claim for a bare procedural violation of the Fair and Accurate Credit Transactions Act, Pub. L. No. 108-159, 117 Stat. 1952 (2003)).

Here, the Court finds that the Association has failed to allege facts demonstrating each element of the standing framework. Regarding the injury-in-fact element, the Association has failed to identify a single instance since 2001 where it was prohibited from engaging another cable service provider. Addressing this concern, the Association claims that Pritam Singh has threatened litigation if the Association were to engage another service provider, *see* Am. Compl. ¶ 82, but the Court finds that this purported harm that could arise by future acts Defendants might take is merely "conjectural or hypothetical," not "actual or imminent." *Lujan*, 504 U.S. at 560. As alleged, the Association has not suffered an injury-in-fact sufficient to confer Article III standing.

Turning to the second required element, the causation element, the Court finds that the Association has failed to allege facts to plausibly suggest that its purported harm is "fairly traceable" to the "exclusive arrangement" between the Association, Comcast, and the Singh Defendants. For example, the Association complains that its residents do not receive high-definition ("HD") television services because the Singh Defendants utilize outdated telecommunications equipment, Am. Compl. ¶ 80, but the Association has failed to demonstrate how the lack of HD programming is causally connected to the "exclusive arrangement" between

the parties. The Association does not allege facts demonstrating that: (1) any other cable service provider has attempted to offer television services to residents of the Association but was prohibited from doing so by Defendants invoking this "exclusive arrangement"; or (2) another cable service provider considered offering television services to residents of the Association but was deterred from doing so because of this "exclusive arrangement." Thus, the Association has failed to allege that its injuries are "fairly traceable" to the challenged contractual provisions. *Cf. Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013) (holding that a homeowners association established the second element of the standing inquiry where "[t]he record is replete with evidence that [the provider's] exclusivity arrangement caused competing cable providers not to offer [the homeowners association] their services").[4]

Turning now to the final element, the redressability element, the Court finds that a favorable court ruling is not likely to redress the Association's injuries. Even if the Court severed the "exclusivity" provision from the parties' agreement, the remainder of the contract would be enforceable as a Bulk Billing Arrangement. The FCC has drawn a clear distinction between "building exclusivity clauses" and "bulk billing arrangements." Indeed, "[t]he 'bulk billing arrangement' is a legally permissible arrangement 'in which one [video service provider] provides video service to every resident of a[ ] [multiple dwelling unit development], usually at a significant discount from the retail rate that each resident would pay if he or she contracted with the [provider]

---

[4] Unlike here, *Lansdowne* was decided at summary judgment with the benefit of a factual record, but that decision is still instructive. In *Lansdowne*, the Fourth Circuit found that the homeowners association ("HOA") established the second prong of the standing inquiry, in part, because representatives of other cable service providers testified that they were deterred from offering television services to residents of the HOA by the building exclusivity provision. Although the instant case is at the pleading stage without a factual record, the Association could have still alleged facts to plausibly suggest that other cable service providers considered (and declined) to offer services to the Association. The Association has provided no such allegations here, thus failing to meet the *Twombly* pleading standard.

individually.'" *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (citing *In the Matter of Exclusive Service Contracts for Provision of Video Services in Multiple Dwelling Units and Other Real Estate Developments*, 25 FCC Rcd. 2460, 2461 (2010)). The bulk billing arrangement is permissible because it lowers costs for residents of the MDU by eliminating the expenses the provider would incur by marketing and selling services to each resident. Moreover, "[a] bulk billing [arrangement] does not prevent MDU residents from obtaining services from another [provider], assuming that another has wired or will wire the MDU, if necessary. . . . Any such residents, however, must pay for both the bulk billing [provider] and the services of the other [provider]. As already noted, bulk billing does not physically or legally prevent a second [provider] from providing service to an MDU resident and does not prevent such [a provider] from wiring an MDU for its service, subject to the permission of the MDU owner." 25 FCC Rcd. at 2465. While "building exclusivity clauses" are unenforceable, "bulk billing arrangements" are permissible and enforceable. Therefore, even if the Court found that the "exclusivity clause" was unenforceable in the instant case, the remainder of the agreement between the parties would stand as a bulk billing arrangement, and the Association (and residents of the Association) would still be obligated to pay the monthly fee to the Singh Defendants. Thus, a favorable court ruling would have no material impact on the economic relationship between the parties. The Association has thus failed to allege the third element of the standing framework.

As a final matter, the Court wishes to explain why leave to amend the complaint should not be given for a second time. Although Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint shall be "freely given when justice so requires," futility of amendment is a proper basis for denying leave to amend. *Alexander v. AOL Time Warner, Inc.*, 132 F. App'x 267,

269 (11th Cir. 2005). Here, since the agreement between the parties would stand as a bulk billing arrangement even if the Court were to rule in the Association's favor, leave to amend should not be given because amendment of the complaint would be futile; the Court does not foresee that any additional allegations or jurisdictional discovery would alter that conclusion. In sum, the Association lacks standing, and Count I should be dismissed accordingly.

### B. State Law Claims (Counts II and III)

Counts II and III of the Amended Complaint bring claims for violations of Florida law, primarily the HOA Act. *See* Am. Compl. at 25, 26. The Court, having dismissed the sole federal claim raised in the Amended Complaint, declines to exercise supplemental jurisdiction over the remaining state law claims. *See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-cv-60912, 2018 WL 4932282, at *4 (S.D. Fla. Oct. 28, 2018) ("Federal law permits [courts] to decline to exercise supplemental jurisdiction over state law claims where it 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

Accordingly, after careful consideration, it is **ORDERED, ADJUDGED, AND DECREED** that:

1. Defendant Comcast Cable Communication's Motion to Dismiss **(DE 44)** be, and the same is, hereby **GRANTED**;

2. The Singh Defendants' Motion to Dismiss **(DE 45)** is hereby **GRANTED**; and

3. Key West Golf Club Homeowners Association, Inc.'s Amended Complaint **(DE 39)** is hereby **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this 24th day of November, 2020.

```
                              /s/ James Lawrence King
                              JAMES LAWRENCE KING
                              UNITED STATES DISTRICT JUDGE
```

**cc:**   **All Counsel of Record**